**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| CANDICE LYNN SHAFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-cv-1328-MPT |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM</u>

## I.     INTRODUCTION

This action arises from the denial of plaintiff's claim for Social Security benefits.

On April 30, 2014, plaintiff filed a Title II application for Social Security Disability

Insurance Benefits ("DIB").[1]  In her application, plaintiff alleged she became disabled on

February 4, 2010,[2] through her last date insured, December 31, 2014.[3]  Plaintiff's

alleged disability is due to degenerative disc disease of the lumbar spine, degenerative

joint disease, obesity, and thoracic outlet syndrom.[4]  The claim was initially denied on

May 11, 2015, and upon reconsideration on August 26, 2015.[5]  Following these denials,

plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 7,

---

[1] D.I. 1.
[2] D.I. 7-5 at 177.
[3] *Id.* at 14
[4] *Id.*
[5] *Id.* at 12.

2015.[6]  The hearing occurred by video conference on April 25, 2017.[7]  Plaintiff

appeared in Dover, Delaware, and ALJ C. Howard Prinsloo participated from St. Louis,

Missouri.[8]  Testimony was provided during the hearing by an impartial vocational expert,

Theresa Wolford, via telephone.[9]  On June 22, 2017, ALJ Prinsloo issued a written

decision denying plaintiff's claims.[10]  Plaintiff requested a review of the ALJ's decision

by the Social Security Appeals Council, which was denied on July 3, 2018.[11]  On August

27, 2018, plaintiff filed a timely appeal with this court.[12]  Presently before the court are

the parties' cross motions for summary judgment.[13]  For the foregoing reasons, the

court will grant plaintiff's motion, and deny defendant's motion. The court reverses the

ALJ's decision and remands this case for further proceedings consistent with this

decision.

## II.    BACKGROUND

Plaintiff was born on May 15, 1971.[14]  She completed ninth grade and received

her GED.[15]  Plaintiff has relevant past work experience as a check processor for

Discover Card.[16]  She worked at Discover Card for eleven years until the site closed in

2008.[17]  After being laid off, plaintiff worked part time at Wawa during which time she

---

[6]  *Id.*
[7]  *Id.*
[8]  *Id.*
[9]  *Id.*
[10] D.I. 11 at 1.
[11]  *Id.*
[12] D.I. 1 at 1.
[13] D.I. 11;D.I. 13.
[14] D.I. 7-5 at 177.
[15] D.I. 13 at 2.
[16] D.I. 7-2 at 26.
[17]  *Id.*

also received a medical assistant certificate.[18]  Plaintiff's employment with Wawa ended

on February 4, 2010,[19] her alleged disability date, due to thoracic outlet syndrome

surgery.[20]  Prior and including plaintiff's disability date, she had a history of

degenerative disc disease of the lumbar spine,[21] degenerative joint disease, obesity,

and thoracic outlet syndrome.  Plaintiff was also treated for cervical disc protrusions

causing mild degenerative disc disease, plantar fasciitis and heel spurs, arachnoids,

high blood pressure, elevated high cholesterol,[22] and chronic depression secondary to

her physical condition.[23]  During the ALJ hearing, plaintiff testified that she had bilateral

outlet syndrome surgery in February 2010, right hip surgery for a torn labrum in 2011,[24]

left foot surgery in 2011 from plantar fasciitis and bone spurs, lumbar fusion surgery in

2013, and a scheduled right hip surgery for April 2017.[25]

Plaintiff alleges she is disabled under the Social Security Act (the "Act").[26]  To be

eligible for disability benefits under the Act, plaintiff must demonstrate that she is

disabled within the meaning of §§ 216(I), 223(d), and 1614(a)(3)(A).  Additionally,

plaintiff must meet the insured status requirements of §§ 216(I) and 223.  Plaintiff has

sufficiently met the requirements for coverage under §§ 216(I) and 223, and her

earnings records show that she has acquired sufficient coverage to remain insured

---

[18]  *Id.*
[19]  D.I. 7-5 at 177.
[20]  D.I. 7-2 at 14.
[21]  D.I. 7-5 at 333.
[22]  D.I. 7-5.
[23]  D.I. 7-2 at 15-26; *D.I.* 11at 2-6.
[24]  D.I. 7-8 at 355.
[25]  D.I. 13 at 2-3.
[26]  D.I. 11.

through December 31, 2014.[27]

## A. Evidence Presented

### 1. Thoracic Outlet Syndrome

Plaintiff was diagnosed with thoracic outlet syndrome in 2001.[28] Plaintiff experienced extreme pain in her left shoulder and was unable to raise her arms to dress herself, to comfortably sleep, and to work on a computer.[29] In 2010, Dr. Tuerff, plaintiff's vascular surgeon, performed surgery to treat her thoracic outlet syndrome.[30] The surgery included a rib resection, scalenectomy, and neurolysis.[31] The surgery improved the condition of her shoulder, resulting in better range of motion, greater strength in her shoulders and arms, and increased activity levels.[32] Dr. Tuerff's follow-up records from 2010 confirm this improvement, but also new complaints of nerve pain in her left hand along the ulnar distribution.[33] Plaintiff requested that Dr. Tuerff complete a residual functional capacity form in October 2010 in which she reported that she was unable to use either of her arms.[34] However, plaintiff did not return for treatment and the record reveals no further complaints during the relevant period.[35]

---

[27] D.I. 7-2 at 14; D.I. 7-5.
[28] D.I. 11 at 2; D.I. 7-18 at 1075.
[29] D.I. 7-18 at 1075.
[30] *Id.* at 1087.
[31] *Id.* at 1083.
[32] *Id.* at 1085.
[33] *Id.*; D.I. 7-2 at 20.
[34] D.I. 7-18 at 1085.
[35] D.I. 7-7.

## 2. Musculostkelatal Conditions

### a. Bilateral Knee Pain

Plaintiff began treatment with Dr. Michael J. Axe at First State Orthopedics for knee and hip pain in 2010.[36]  MRIs of the both knees showed mild to moderate degenerative change with high grade chondromalacia of the lateral facet.[37]  X-rays showed lateral subluxation and tilt of the right knee and mild lateral tilt of the left knee.[38]  Upon examination, plaintiff had trace effusion and marked retropettelar crepitus in the right knee with no effusion and moderate crepitus in the left knee.[39]  Plaintiff had Synvisc One knee injections in both knees in November 2010.[40]  Dr. Axe suggested surgery on both knees.[41]

### b. Right Hip Torn Acetabular Labrum

In 2011, plaintiff began treatment with Dr. Alex B. Bodenstab at First State Orthopedics for her hip pain and was diagnosed with a torn labrum in her right hip.[42]  On May 31, 2011, plaintiff underwent a surgical arthroscoptic resection of the torn labrum.[43]  In February 2012, Dr. Axe reported that plaintiff's hip pain as improved, and plaintiff was discharged from treatment.[44]

---

[36] D.I. 7-8 at 341.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at 344, 347.
[41] *Id.*
[42] D.I. 7-8 at 355.
[43] *Id.*
[44] *Id.* at 363.

### c. Disc Disease & Lumbar Spine Conditions

In 2010, plaintiff began seeing Dr. Bruce Katz at First State Orthopedics and was diagnosed with disc disease at L3-4 and L4-5.[45]  An MRI of the lumbar spine from September 2010 revealed disc disease at L3-4 and L4-5, a moderate sized right paracentral disc protrusion at L4-5 impinging on the right L5 traversing nerve root, and a disc bulge with a small central disc protrusion at L4-5.[46]  In September 2010, plaintiff returned to Dr. Katz who reported that plaintiff was able to ambulate on her heels and toes and walk heel to toe without difficulty, had full, pain free range of motion in her hip, painful lumbar range of motion with no tenderness, 5/5 motor strength in the lower extremities, and a negative straight-leg raising test.[47]  Plaintiff underwent a series of lumbar epidural injections performed by Dr. Emmanual Devotta, a pain management specialist,[48] in 2012.[49]

A provocative discogram in 2012 showed a grade IV tear at L3-4 on provocation and to a lesser degree at the L4-5 and L5-S1 levels.[50]  In January 2013, plaintiff complained of increased back pain, as well as, hip and knee pain following the discogram.[51]  Plaintiff rated her pain at six out of ten and advised of limitations/pain with moderate activity, such as moving a table, pushing a vacuum, bowling, and climbing flights of stairs.[52]  An MRI of her lumbar spine showed L3-4 and L4-5 disc disease and

---

[45] *Id.* at 344.
[46] *Id.* at 37.
[47] *Id.* at 347.
[48] D.I. 11 at 3.
[49] D.I. 7-2 at 21;
[50] D.I. 7-14 at 798.
[51] *Id.* at 797.
[52] *Id.*

a disc bulge at L3-4 and L4-5.[53]  Therefore, on April 23, 2013, plaintiff underwent

lumbar fusion surgery consisting of L3-4 and L4-5 discectomy, decompression, and

interbody fusion.[54]  Prior to surgery, plaintiff experienced pain in the back that radiated

down to the right thigh, groin, and knee.[55]  Post surgery, plaintiff complained of pain

from mid-back into the left buttock.[56]

Plaintiff underwent physical therapy and was discharged to a home exercise

program in November 2013.[57]  Physical therapy records show that she was walking one

mile for forty-five minutes to one hour, three to four times per week; however, plaintiff's

pain increased by standing for twenty minutes or sitting for thirty minutes and her pain

decreased when lying down.[58]

Subsequently, plaintiff underwent injections for right sacroiliac joint pain.[59]  In

February 2014, plaintiff reported increased pain since the surgery and that the

injections to the sacroiliac joint were ineffective.[60]  In March 2014, plaintiff complained

of increased back and bilateral hip pain.  On examination, palpable paravertebral

muscle spasm, tenderness over the sciatic notches, and a positive straight leg raising

test indicative of pain were exhibited.[61]  An MRI of the lumbar spine revealed post-

operative changes at L3-4 and L4-5, including fibrosis and narrowing on the right

---

[53] *Id.*
[54] *Id.* at 804-807.
[55] D.I. 7-9 at 406.
[56] *Id.*
[57] D.I. 7-10.
[58] D.I. 7-9 at 406.
[59] D.I. 7-14 at 757.
[60] D.I. 7-15 at 956.
[61] D.I. 7-14 at 757.

extending to the level inferior to the L3-4 disc space.[62]  On April 17, 2014, Dr. Bose recommended another lumbar surgery and to begin a trial spinal cord stimulator prior to the proposed surgery.[63]  Plaintiff did not begin the spinal cord stimulator until June 2015.[64]

From October 2014 through February 2015, plaintiff underwent physical therapy for pelvic floor symptoms and back and hip pain two to three times per week.[65]  Physical therapy records noted that she was walking one mile for forty-five minutes three to four times per week, but her pain increased by standing for twenty minutes or sitting for thirty minutes, which decreased upon lying down.[66]

### d.    Plantar Fasciitis and Heel Spurs

Plaintiff sought treatment for left foot pain in October 2010.[67]  She was treated with custom orthotics, exercises, and steroid injections.[68]  Following treatment, an MRI revealed moderate to severe plantar fasciitis and a moderate heel spur with bone marrow edema.[69]  Plaintiff reported the return of symptoms in May 2011.[70]  On October 27, 2011, plaintiff underwent a partial fasciectomy and heel spur resection on her left foot.[71]  Thereafter, she reported decreased pain following the surgery, but complained

---

[62] *Id.* at 788.
[63] *Id.* at 787.
[64] D.I. 7-17 at 966.
[65] D.I. 7-16 at 827-894; 7-9 at 412.
[66] D.I. 7-9 at 406.
[67] D.I. 7-20 at 1192.
[68] *Id.*
[69] *Id.* at 1196, 1199-20.
[70] *Id.* at 1192.
[71] *Id.* at 1212-13.

of metatarsal head and medial and lateral ankle pain.[72]  Plaintiff was discharged from physical therapy and did not again seek treatment for these conditions until 2016.[73]

## B.    Hearing Testimony

### 1.    Plaintiff's Testimony

At the April 25, 2017 hearing, plaintiff testified regarding her background, work history, and alleged disability.[74]  She is married, has three children, and currently lives with her husband. [75]  Plaintiff received a GED.[76]  Plaintiff testified that she worked at Discover Card for eleven years where she primarily opened new accounts and performed check processing.[77]  She reported that her employment with Discover Card ended in 2008 when the site closed.[78]  She testified that while employed at Discover Card, she was sitting most of the time, working with a computer and telephone, and did not lift more than ten pounds.[79]  Subsequently, plaintiff worked part-time at Wawa while pursuing a medical assistant degree.[80]  At Wawa, she made sandwiches and coffee, and operated the cash register.[81]  Plaintiff testified that she ended employment with Wawa in February 2010 due to her thoracic outlet syndrome surgery.[82]

Plaintiff further claimed that she needed the thoracic outlet surgery because she

---

[72] *Id.* at 1240.
[73] *Id.* at 1245.
[74] D.I. 7-2 at 42-74.
[75] *Id.* at 46.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.* at 48.
[81] *Id.*
[82] *Id.*

was unable to remove her own shirt, could not raise her arm above her head, and was in extreme pain.[83] Plaintiff stated that, following the surgery, she was able to raise her arm, but continued to have issues, including tightness in her neck and shoulders, and ulnar nerve damage in her left arm that effects her ring and pinky fingers of her left hand.[84] Plaintiff also testified that in 2011, she had hip surgery for a torn labrum.[85] Subsequently, she had left foot surgery for plantar fasciitis and a bone spur.[86]

Plaintiff further testified that she began seeing a cardiologist after her thoracic outlet surgery because of heart complications during surgery.[87] She was placed on a heart monitor during her hospitalization.[88] She stated that she has PVCs which are more prevalent when she experiences anxiety.[89] Plaintiff also has high cholesterol and elevated blood pressure.[90]

In 2013, plaintiff had lumbar fusion surgery at L3-4 and L4-5.[91] Following this surgery, plaintiff underwent physical therapy for over six months at Christiana Care.[92] Dr. Bose performed injections on plaintiff and prescribed pain medication.[93] Prior to the lumbar fusion, plaintiff described weakness which caused her to collapse, and severe sharp pain in her lower back and spine.[94] Plaintiff testified that the surgery "made it 100

---

[83] *Id.*
[84] *Id.* at 48-49
[85] *Id.* at 50.
[86] *Id.*
[87] *Id.* at 54.
[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *Id.* at 51, 55.
[93] *Id.* at 55.
[94] *Id.* at 51.

percent worse," and she now suffers with constant pain and weakness.[95]

Subsequent to plaintiff's lumbar fusion, Dr. Bose suggested a second surgery. Plaintiff obtained another opinion which was contrary to Dr. Bose's recommendation and, as a result, did not undergo surgery.[96] At the recommendation of Drs. Bose and Devotta, plaintiff had a trial spinal stimulator placed which reportedly did not alleviate her pain or symptoms.[97] Additionally, plaintiff also received physical therapy for issues with her hip and pelvic floor and for urination control, which she claims is due to arachnoiditis.[98]

Plaintiff testified that, because of her arachnoiditis, she needs assistance getting out of bed and cannot sit comfortably.[99] Plaintiff testified that sitting causes pain and pressure in her lower back, and standing and lifting over ten pounds causes pressure in her back.[100] She reported that she has difficulty lifting anything with her left hand, but is able to lift five pounds with her right hand.[101] Additionally, plaintiff has difficulty bending due to her knees and back.[102] She alleges that experiencing difficulty walking, but is able to walk without an assisted device.[103] Although plaintiff is able to drive, she begins having pain after ten minutes.[104] She cannot clean or use a vacuum, and requires

---

[95] *Id.* at 52.
[96] *Id.* at 55.
[97] *Id.* at 56.
[98] *Id.* at 52-57.
[99] *Id.* at 53.
[100] *Id.* at 60.
[101] *Id.* at 60.
[102] *Id.* at 61.
[103] *Id.* at 61.
[104] *Id.* at 62.

assistance to do laundry.[105]  She can cook, dress herself, and shower without assistance.[106]

Subsequent to plaintiff's alleged onset date, she began seeing Dr. Rabono in 2015.[107]  She claims that she needs two knee replacements.[108]  Plaintiff was scheduled for a total hip replacement following the hearing.[109]  Plaintiff alleges that she cannot have any further treatment on her back because of her arachnoiditis.[110]  According to plaintiff, there is no treatment or cure for arachnoiditis[111].

## 2.    Vocational Expert's Testimony

The ALJ asked the vocational expert ("VE") to consider a hypothetical individual of plaintiff's age, education, and work history.[112]  Initially, the ALJ asked the VE to assume that the individual retains a residual functional capacity for light work, but would be limited to only occasional stooping, kneeling, crouching, crawling.[113]

The ALJ first asked whether the individual could perform past work.[114]  The VE testified that such an individual could perform past relevant work.[115]

The second hypothetical presented by the ALJ included the same limitations as the first, but with the additional restriction that the individual would be limited to standing

---

[105] *Id.* at 62-63.
[106] *Id.* at 62-63.
[107] *Id.* at 57.
[108] *Id.*
[109] *Id.* at 58.
[110] *Id.* at 66.
[111] *Id.*
[112] *Id.* at 69.
[113] *Id.*
[114] *Id.* at 69.
[115] *Id.*

or walking for a total of only four hours in an eight-hour workday.[116]  In response, the VE testified that the individual's past work could still be performed.[117]

The third hypothetical had the same limitations as the first and second with the additional restrictions that the individual would be incapable of climbing ladders, ropes or scaffolds, or performing any other work around hazards.[118]  The VE testified in response that past work could be performed.[119]

The ALJ further inquired whether the individual with the same limitations as in hypothetical two would be considered as having a light Residual Functional Capacity ("RFC"), or sedentary RFC.[120]  In response, the VE testified that there are jobs available at the light RFC level that could be performed under the restriction that the individual would be limited to walking or standing for four hours in an eight hour workday.[121]  The VE further testified that the employer would have to agree to the restrictions.[122]

The ALJ then questioned the VE about whether a sedentary RFC with the same limitations would require accommodation from the employer.[123]  The VE testified that if the individual needed to sit/stand in intervals less than an hour, most employers will accommodate.[124]  However, the VE based her conclusion from personal experience and not on the Dictionary of Occupational Titles ("DOT").[125]  The ALJ then questioned

---

[116] *Id.* at 70.
[117] *Id.* at 70.
[118] *Id.* at 70.
[119] *Id.* at 70.
[120] *Id.* at 70.
[121] *Id.* at 70.
[122] *Id.* at 70.
[123] *Id.* at 70-71.
[124] *Id.* at 71.
[125] *Id.* at 71.

whether the individual's previous work as a proof operator with a sit/stand limitation at thirty minute intervals would require an accommodation.[126]  The VE testified that less than thirty minute intervals would make any accommodation difficult.[127]

Subsequently, Gary Linarducci, plaintiff's attorney, presented the VE with a myriad of questions.[128]  Counsel asked whether past relevant work could be performed if the individual were restricted to using her hands ten percent of the time.[129]  The VE responded that the person could not perform past relevant work.[130]  Mr. Linarducci then inquired whether plaintiff could perform sedentary work if she were limited to using her hands, fingers, and arms ten percent of the time.[131]  The VE responded "[n]o, there would be no jobs available at any level."[132]

C.    **The ALJ's Findings**

Based on the medical evidence and testimony presented, the ALJ determined that plaintiff was not disabled and, therefore, ineligible for Social Security Disability Insurance and Supplemental Security Income.[133]  The ALJ's findings are summarized as follows:

1.    Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014.[134]

2.    Plaintiff has not engaged in substantial gainful activity during the period

---

[126] *Id.* at 71.
[127] *Id.* at 71.
[128] *Id.* at 72.
[129] *Id.* at 72.
[130] *Id.* at 72.
[131] *Id.* at 72.
[132] *Id.* at 72.
[133] *Id.* at 14-27
[134] *Id.* at 14.

from her alleged onset date of February 4, 2010 through her date last insured of December 31, 2014 (20 CFR 404.1571 *et seq.*).[135]

3.   Plaintiff has the following severe impairments: degenerative disc disease, lumbar spine; degenerative joint disease; obesity; and thoracic outlet syndrome (20 CFR 404.1520(c)).[136]

4.   Through the last date insured, plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).[137]

5.   Through the last date insured, plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the plaintiff can occasionally stoop, kneel, crouch, and crawl; stand and/or walk for a total of four hours in an eight hour work day; never climb ladders, ropes, or scaffolds; and have no exposure to hazards.[138]

6.   Through the last date insured, plaintiff was able to perform past relevant work as a proof operator. This work did not require the performance of work related activities precluded by the plaintiff's residual functional capacity (20 CFR 404.1565).[139]

7.   Plaintiff was not under a disability, as defined by the Social Security Act, at any time from February 4, 2010, the alleged onset date, through December 31, 2014, the date last insured. (20 CFR 404.1520(F)).[140]

Consequently, based on the application for a period of disability and disability insurance benefits protectively filed on April 30, 2014, the ALJ found that plaintiff is not disabled under sections 216(I) and 223(d) of the Social Security Act.[141]

---

[135] *Id.*
[136] *Id.*
[137] *Id.* at 17.
[138] *Id.* at 18.
[139] *Id.* at 26.
[140] *Id.* at 26.
[141] *Id.* at 26.

### III.    STANDARD OF REVIEW

#### A.    Motion for Summary Judgment

Bot parties moved for summary judgment.[142]  In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[143]  If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[144]

This standard does not change merely because there are cross-motions for summary judgment.[145]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[146]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[147]

#### B.    Court's Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of the ALJ's decision by the district court.  The court may reverse the Commissioner's final determination only if the

---

[142] D.I. 11; 12.
[143] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).
[144] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).
[145] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[146] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[147] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

ALJ did not apply the proper legal standards, or the record did not include substantial evidence to support the ALJ's decision. The Commissioner's factual decisions are upheld if supported by substantial evidence.[148] Substantial evidence means less than a preponderance of the evidence, but more than a mere scintilla of evidence.[149] As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[150]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.[151] The court's review is limited to the evidence that was actually presented to the ALJ.[152] The Third Circuit has explained that a:

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., evidence offered by treating physicians) or if it really constitutes not evidence but mere conclusion.[153]

Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.[154] Even if the court would have decided the case differently, it must defer to the ALJ and

---

[148] 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v.Heckle*, 806 F. 2d 1185, 1190 (3d Cir. 1986).

[149] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

[150] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[151] *Monsour*, 806 F.2d at 1190.

[152] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).

[153] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

[154] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

affirm the Commissioner's decision so long as that decision is supported by substantial evidence.[155]

Where "review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."[156]  In *Securities & Exchange Commission v. Chenery Corp.*, the Supreme Court found that a "reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."[157]  The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[158]  Thus, this court's review is limited to the four corners of the ALJ's decision.[159]

### C.     ALJ's Disability Determination Standard

The Supplemental Social Security Income (SSI) program was enacted in 1972 to assist "individuals who have attained the age of 65 or are blind or disabled" by setting a minimum income level for qualified individuals.[160]  A claimant – in order to establish SSI eligibility – bears the burden of proving that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[155] *Monsour*, 806 F.2d at 1190-91.
[156] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[157] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).
[158] *Fargnoli v. Massanari*, 247 F.3d 34, 44, n.7 (3d Cir. 2001).
[159] *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).
[160] *Sullivan v. Zebley*, 493 U.S. 521, 524 (1990) (citing 42 U.S.C. § 1381 (1982)).

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of or not less than twelve months."[161]  Moreover, "the physical or mental impairment or impairments must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy."[162]  A "physical or mental impairment" results from anatomical, physiological, or psychological abnormalities which are evidenced by medically acceptable clinical and laboratory diagnostic techniques.[163]

### 1.    Five-Step Test.

The Social Security Administration uses a five-step sequential claim evaluation process to determine whether an individual is disabled.[164]

In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  If a claimant is found to be engaged in substantial activity, the disability claim will be denied.

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work.  The claimant bears the burden of demonstrating an inability to return to her past relevant work.  If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

At this stage, the burden of production shifts to the Commissioner,

---

[161] 42 U.S.C. § 423(d)(1)(A).
[162] 42 U.S.C. § 423(d)(2)(A).
[163] 42 U.S.C. § 423(d)(3).
[164] 20 C.F.R. § 416.920(a); *see also Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).

who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step.[165]

If the ALJ determines that a claimant is disabled at any step in the sequence, the analysis ends.[166]

## 2. Weight Afforded Treating Physicians

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight."[167] Moreover, such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on record.[168]

The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled.[169] If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical

---

[165] *Plummer*, 186 F.3d at 427.
[166] 20 C.F.R. § 404.1520(a).
[167] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).
[168] *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).
[169] *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429).

evidence."[170]  If an opinion is rejected, then the ALJ must provide an explanation for the rejection.  However, the explanation need not be exhaustive, but rather "in most cases, a sentence or short paragraph would probably suffice."[171]

However, a statement by a treating source that a claimant is "disabled" is not a medical opinion:  rather, it is an opinion on an issue reserved to the ALJ because it is a finding that is dispositive of the case.[172]  Therefore, only the ALJ can make a disability determination.

### 3.    Evaluation of Subjective Accounts of Pain[173]

Statements about the symptoms alone never establish the existence of any impairment or disability.[174]  The Social Security Administration uses a two-step process to evaluate existence and severity of symptoms.

### a.    Step One, Existence of Pain

First, the ALJ must find a medically determinable impairment – proven with medically acceptable clinical and laboratory diagnostic data – that could reasonably be expected to produce the claimant's symptoms.  Otherwise, the ALJ cannot find the applicant disabled, no matter how genuine the symptoms appear to be.

This step does not consider the intensity, persistence, and limiting effects of the

---

[170] *Plummer*, 186 F.3d at 429.
[171] *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).
[172] *See* 20 C.F.R. § 416.927 (e)(1).
[173] *See* 20 C.F.R §§ 416.928-29; *see also* SSR 96-7p.
[174] A symptom is an individual's own description of physical or mental impairments such as pain, fatigue, shortness of breath and other complaints.  See SSR 96-7p.

symptoms on the claimant: it only verifies whether a medical condition exists that could objectively cause the existence of the symptom.

Analysis stops at this step where the objectively determinable impairment meets or medically equals one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, because the claimant is considered disabled *per se*.

### b.     Step Two, Severity of Pain

At step two, the ALJ must determine the extent to which the symptoms limit the claimant's ability to do basic work activities. At this step, the ALJ must consider the entire record, including medical signs, laboratory findings, the claimant's statements about symptoms, any other information provided by treating or examining physicians and psychologists, and any other relevant evidence in the record, such as the claimant's account of how the symptoms affect her activities of daily living and ability to work.[175]

Where more information is needed to assess a claimant's credibility, the ALJ must make every reasonable effort to obtain available information that would shed light on that issue. Therefore, the ALJ must consider the following factors relevant to symptoms, only when such additional information is needed:

(i)  The applicants' account of daily activities;

(ii)  The location, duration, frequency, and intensity of pain or other symptoms;

(iii)  Precipitating and aggravating factors;

---

[175] 20 C.F.R. § 404.1529.

(iv)  The type, dosage, effectiveness, and side effects of any medication the applicant takes or has taken to alleviate pain or other symptoms;

(v)  Treatment, other than medication, the applicant receives or has received for relief of pain or other symptoms;

(vi)  Any measures the applicant uses or has used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning functional limitations and restrictions due to pain or other symptoms.[176]

### 4.  Factors in Evaluating Credibility[177]

A claimant's statements and reports from medical sources and other persons with regard to the seven factors, noted above, along with any other relevant information in the record, provide the ALJ with an overview of the subjective complaints, and are elements to the determination of credibility.

Consistency with the record, particularly medical findings, supports a claimant's credibility.  Since the effects of symptoms can often be clinically observed, when present, they tend to lend credibility to a claimant's allegations.  Therefore, the adjudicator should review and consider any available objective medical evidence concerning the intensity and persistence of pain or other symptoms in evaluating the claimant's statements.

---

[176] 20 C.F.R. § 404.1529
[177] SSR 16-3p.

Persistent attempts to obtain pain relief, increasing medications, trials of different types of treatment, referrals to specialists, or changing treatment sources may indicate that the symptoms are a source of distress and generally support a claimant's allegations. An applicant's claims, however, may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show noncompliance with prescribed treatment.

Findings of fact by state agency medical and psychological consultants and other physicians and psychologists regarding the existence and severity of impairments and symptoms, and opinions of non-examining physicians and psychologist are also part of the analysis. Such opinions are not given controlling weight. However, the ALJ, although not bound by such findings, may not ignore them and must explain the weight afforded those opinions in his decision.

Credibility is one element in determining disability. The ALJ must apply his finding on credibility in step two of the five-step disability determination process, and may use it at each subsequent step.

The decision must clearly explain – provide sufficiently specific reasons based on the record – to the claimant and any subsequent reviewers, the weight afforded to the claimant's statements and the reasons therefore.

The law recognizes that the claimant's work history should be considered when evaluating the credibility of her testimony or statements.[178] A claimant's testimony is

---

[178] 20 C.F.R. § 404.1529(a)(3).

accorded substantial credibility when she has a long work history, which demonstrates it is unlikely that, absent pain, she would have ended employment.[179]

### 5. Medical Expert Testimony

The onset date of disability is determined from the medical records and reports and other similar evidence, which require the ALJ to apply informed judgment.[180] "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."[181]

## IV. DISCUSSION

### A. Parties Contentions

#### 1. Plaintiff's Contentions

In this appeal, plaintiff claims that the ALJ's evaluation of the medical opinion evidence is contrary to agency policy and Third Circuit precedent.[182] Plaintiff argues that the ALJ rejected the evidence presented by her treating physicians, and instead, relied on outdated medical opinions and his own lay opinion of raw medical data.[183]

Plaintiff argues that the opinions of her treating specialists establish greater limitations than set forth in the RFC, and therefore, pursuant to Agency authority, she is

---

[179] *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981)). In *Podedworny*, the claimant worked for thirty-two years as a crane operator for one company. He had a ninth grade education and left his employment after the company physicians determined that his symptoms of dizziness and blurred vision prevented him from safely performing his job.
[180] SSR 83-20.
[181] *Id.*
[182] D.I. 11 at 10.
[183] *Id.* at 10-11.

disabled under its definition.[184]  She argues that the RFC and hypothetical questions presented to the VE must accurately set forth all of the practical effects of all of her documented impairments.[185]  Thus, she alleges that an RFC which does not do so is contrary to law, and vocational testimony based on an inaccurate RFC is not substantial evidence supporting the ALJ's denial.[186]  Plaintiff further contends the ALJ's denial was insufficient as a matter of law because he provided insufficient legal grounds to reject the opinions of plaintiff's treating specialists, Drs. Tuerff, Devotta, and Bose.[187]  Instead, plaintiff argues, that the ALJ gave significant weight to the State Agency medical consultants, who did not conduct an examination of plaintiff for their assessment[188]

### 2.    Defendant's Contentions

Defendant contends that the substantial evidence standard of review is deferential.[189]  Additionally, defendant argues that the regulations permit the ALJ to evaluate all opinions and other evidence to determine a claimant's RFC, and if a treating physician's opinion is inconsistent with his own treatment notes and unsupported by other record evidence, it is entitled to less weight.[190]  Defendant further argues that substantial evidence supports the ALJ's decision to give limited weight to the medical opinions of Drs. Tuerff, Bose, and Devotta.[191]

---

[184] *Id.* at 11.
[185] *Id.*
[186] *Id.*
[187] *Id.* at 12.
[188] *Id.*
[189] D.I. 13 at 7.
[190] *Id.*
[191] *Id.* at 8-15.

The defendant also maintains that the ALJ was under no duty to contact any of plaintiff's specialists because of the evidence in the record, nor schedule a consultative medical examination since it is discretionary and not mandatory.[192] Defendant argues that substantial evidence supports the RFC finding posed to the VE in the hypothetical.[193]

## B.    Disability Analysis

Title II of the Act, 42 U.S.C. § 423(a)(I)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability."[194]  To qualify for DIB, a claimant must establish disability prior to the date she was last insured.[195]  A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least 12 months.[196]  To be disabled, the severity of the impairment must prevent return to previous work, and based on age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[197]

In determining whether a person is disabled, the Commissioner is required to

---

[192] *Id.* at 15.
[193] *Id.* at 17.
[194] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
[195] *See* 20 C.F.R. § 404.131.
[196] 42 U.S.C. §§ 423(d)(I)(A), 1382(c)(a)(3).
[197] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

perform a five-step sequential analysis.[198]  If a finding of disability or non-disability can

be made at any point in the sequential process, the review ends.[199]  When a claimant's

impairment or its equivalent matches an impairment in the listing, the claimant is

presumed disabled.[200]  The Commissioner also determines whether the claimant retains

the RFC to perform her past relevant work.[201]  A claimant's RFC is "that which an

individual is still able to do despite limitations caused by [her] impairment(s)."[202]  For

steps one through four, the burden rests on the claimant to prove.[203]

At the fifth and final step, the Commissioner must show the claimant is capable

of performing other available work existing in significant national numbers and

consistent with the claimant's medical impairments, age, education, past work

experience, and RFC before denying disability benefits.[204]  In making this determination,

the ALJ must analyze the cumulative effect of all the claimant's impairments and often

seeks the assistance of a vocational expert.[205]

## 1.    Weight Accorded to Medical Opinion Evidence

Plaintiff asserts the ALJ erred by affording "little weight" to the opinions of Drs.

Tuerff, Devotta, and Bose,[206] while giving substantial weight to the opinions of

---

[198] 20 C.F.R § 404.1520; see also *Plummer v. Apfel*, 186 F.3d 422, 427-28
(3dCir. 1999).
[199] 20 C.F.R. § 404.1520(a)(4).
[200] 20 C.F.R. § 404.1520(a)(4)(iii).
[201] 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428.
[202] *Fargnoli*, 247 F.3d at 40.
[203] *Plummer*, 186 F.3d at 428.
[204] *Plummer*, 186 F.3d at 427-28.
[205] *Id.*
[206] D.I. 11 at 11.

nonexamining medical consultants.[207]  A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when the opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."[208] Such reports will be afforded controlling weight where a treating source's opinion on the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence on record.[209]

The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled.[210]  It is error, however, to apply controlling weight to an opinion merely because it comes from a treating source if it is not well-supported by the medical evidence, or inconsistent with other substantial evidence, medical or lay, in the record.[211]  If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports," and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence."[212] Further, medical testimony from a doctor who has never examined the claimant should not be given credit if it contradicts the testimony of the claimant's treating physician.[213] If the ALJ does not give a physician's report controlling weight, he must examine

---

[207] *Id.* at 12.
[208] *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000).
[209] *Fargnoli*, 247 F.3d at 43.
[210] *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429).
[211] SSR 96-2p, 1996 WL 374188 at *2.
[212] *Plummer*, 186 F.3d at 429.
[213] *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986).

multiple factors.[214]  These factors include the "[e]xamining relationship," the "[t]reatment

relationship" which considers the "[l]ength of the treatment relationship and the

frequency of examination," the "[n]ature and extent of the treatment relationship," the

degree and extent the relevant evidence supports a treating physician's opinion, the

consistency of the opinion with the record as a whole, and the specialization of the

treating physician in relation to the medical issues involved.[215]  An ALJ must weigh all

the evidence in the record.[216]   Failure of an ALJ to examine and elaborate on these

factors is grounds for remand.[217]

### a.    Treating Physicians

The ALJ considered the medical opinions of plaintiff's specialists:  Drs. Tuerff,

Devotta, Bose, Scaffidi, and Fisher.  The ALJ assigned little weight to these

specialists,[218] no weight to Dr. Fisher,[219] and significant weight to Dr. Scaffidi, plaintiff's

cardiologist.[220]  Plaintiff argues that the ALJ improperly granted little weight to Drs.

Tuerff, Devotta, and Bose.[221]  Additionally, the ALJ also considered the opinions of

State Agency Medical Consultants, Drs. Darrin Campo, and Vinod K. Kataria.[222]

Plaintiff argues that the ALJ erred by failing to contact any of her physicians for

---

[214] 20 C.F.R. §404.1527(c).
[215] *Id.*
[216] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).
[217] *Solomon v. Colvin*, C.A. No. 12-1406-RGA-MPT, 2013 WL 5720302, at *12 (D. Del. Oct. 22, 2013).
[218] D.I. 7-2 at 23-25.
[219] D.I. 7-2 at 25.
[220] D.I. 7-2 at 23.
[221] D.I. 11.
[222] D.I. 7-2 at 25.

clarification, arrange for a consultative examination, schedule a review of the record and testimony by a medical expert, or send the updated case record to the State Agency for review by an Agency Consultant.[223]  However, as defendant correctly asserts, the regulations provide that the decision to obtain a consultative examination falls within the discretion of the ALJ:  it is not mandatory.[224]  Additionally, an ALJ requests for mental or physical examinations and medical expert testimony are discretionary.[225]  The ALJ is "required to obtain an updated report whenever additional medical evidence is received that, in the opinion of the ALJ, may change the state agency medical consultant's finding that a disability claimant's impairment(s) is not equivalent in severity to any impairment in the listing of impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. S.S.R. 96-6p."[226]  However, since plaintiff's last insured date was December 31, 2014, updated records would not be relevant to her claim.  Therefore, plaintiff's arguments in this regard lack merit.

### i.    Dr. Tuerff

        The ALJ accorded very little weight to the opinion of Dr. Tuerff, plaintiff's vascular surgeon.  The ALJ's decision was based on Dr. Tuerff's Residual Functional Capacity Evaluation of December 27, 2010.  The form did not indicate how long the plaintiff could stand and/or walk or sit, stating "lumbar spine issues."[227]  Dr. Tuerff further opined that plaintiff could only remain at a workstation for thirty minutes total in

---

[223] D.I. 11 at 18.
[224] 20 C.F.R. § 404.1519a(b)
[225] 20 C.F.R. § 404.1517; 20 C.F.R. § 404.1527(e)(2)(iii).
[226] *Wilson v. Astrue,* 331 F. App'x 917, 918 (3d Cir. 2009).
[227] D.I. 7-2 at 25; D.I. 7-7 at 303-305.

an eight hour workday and would need to lie down for more than two hours.[228]

The ALJ afforded little weight to Dr. Tuerff's opinion because she only treated plaintiff for thoracic outlet syndrome:  she did not review the plaintiff's medical records regarding her musculoskeletal impairments[229]  Therefore, the ALJ properly concluded that Dr. Tuerff's opinion was based on the plaintiff's subjective allegations rather than objective medical evidence.[230]  Dr. Tuerff completed a second Residual Functional Capacity Evaluation on February 15, 2017,[231] which the ALJ properly gave close to no weight because it was remote from the last date insured.[232]  However, although the ALJ may have been correct in applying very little weight to Dr. Tuerff's opinion, he erred by failing to elaborate on the factors set forth in 20 C.F.R. §404.1527(c) as required by Third Circuit precedent.

### ii.      Dr. Devotta

The ALJ erred in applying little weight to the opinion of Dr. Devotta, plaintiff's pain management specialist, because of inconsistencies in his opinion with plaintiff's reports and his own treatment records.[233]  On May 20, 2014, Dr. Devotta opined that the plaintiff could lift or carry five pounds frequently and ten pounds occasionally; stand and/or walk fifteen to twenty minutes during a single instance for two hours total in an eight hour workday; sit for thirty minutes at a time and for four hours total in an eight

---

[228] *Id.*
[229] D.I. 7-2 at 24.
[230] *Id.*
[231] D.I. 7-19 at 1175-1178.
[232] D.I. 7-2 at 24.
[233] D.I. 7-2 at 25.

hour workday; and remain at a work station for two to four hours per day.[234]

Defendant argues that substantial evidence supports the ALJ's determination, specifically, plaintiff's report from June 2014 that she could walk forty-five minutes to an hour at a time.[235]  However, plaintiff emphasizes the Function Report, on which the ALJ relied, further provided that she must lie down three to four times per day for an hour each time,[236] awakes frequently through the night due to pain,[237] has difficult performing personal care functions,[238] and has similar limitations in household abilities, including making meals and housework.[239]  Plaintiff, therefore, argues that when an ALJ misstates and/or misrepresents her activities, those findings cannot be substantial evidence supporting a denial of benefits.[240]  Further, "[i]n choosing to reject the treating physician's assessment, an ALJ may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion."[241]  Here, the ALJ failed to justify his decision with objective medical evidence when affording Dr. Devotta's opinion little weight.

The ALJ's decision also relied on Dr. Devotta's November 2014 and January 2015 reports that "claimant was coping up [sic] and doing her day-to-day activity of daily living."[242]  The ALJ found that "[n]o twisting, stooping, or crouching is inconsistent with

---

[234] D.I. 7-14 at 814-815.
[235] D.I. 13 at 14; D.I. 7-2 at 25.
[236] D.I. 7-6 at 225.
[237] Id. at 226.
[238] Id.
[239] Id. at 226-227.
[240] *Id.*
[241] *Morales v. Apfel,* 225 F.3d 310, 317-18 (3d Cir. 2000)(citations omitted).
[242] D.I. 7-2 at 25; D.I. 7-17 at 971; D.I. 7-17 at 974.

the claimant's reports of performing light household chores."[243]  However, as plaintiff

contends, performing daily activities is not indicative of the ability to work on a regular

and continuous basis.[244]  20 C.F.R. §404.1572(c) does not consider activities such as,

"taking care of yourself, household tasks, hobbies, therapy, school attendance, club

activities, or social programs to be substantial gainful activity."[245]  Finally, the ALJ erred

by failing to examine or expand on the factors set forth in 20 C.F.R. §404.1527(c) when

explaining why Dr. Devotta's opinion should not be given controlling weight.

### iii.    Dr. Bose

The ALJ accorded little weight to the opinion of Dr. Bose because his "extreme

opinions are inconsistent with the medical evidence of record."[246]  Dr. Bose's

Physician's Report of Claimant's Functional Level completed on May 15, 2014, opined

that the plaintiff could sit for two hours in an eight hour work day; stand, walk, and drive

for one hour each in an eight hour work day; lift a maximum of ten pounds occasionally;

could never bend, turn/twist, kneel, squat, or crawl; climb, perform repeated arm

motions, reach above her shoulders, and operate foot controls twenty-five percent of

the workday.[247]

Dr. Bose commented plaintiff is "unable to work consistently, permanently totally

disabled."[248]  Defendant argues that the determination of disability under the Act is only

---

[243] D.I. 7-2 at 25.
[244] D.I. 11 at 17.
[245] 20 C.F.R. §404.1572(c).
[246] D.I. 7-2 at 25.
[247] D.I. 7-14 at 811.
[248] D.I. 7-14 at 811.

reserved for the Commissioner, and thus, Dr. Bose's opinion should be discounted on this ground alone.[249]  However, the mere utterance of the word "disabled" does not make a physician's opinion "conclusory."[250]  Rather than focusing on the doctor's choice of words, the ALJ was obligated to examine the substantive evidence on which the physician's conclusion was based.[251]

The ALJ's decision to grant Dr. Bose's opinion little weight appears based primarily on his written comment that plaintiff is "unable to work consistently, permanently totally disabled,"[252] rather than on the substantive evidence in the record. Furthermore, the record evidence concerning the nature and extent of her pain that the ALJ cites is supported by objective medical evidence, including MRI testing, surgical notes, physical therapy, and notations of increased pain.[253]

Finally, the ALJ stated that subsequent to lumbar fusion surgery by Dr. Bose, Dr. Devotta's records indicated that plaintiff had normal strength and ability to walk on her heels and toes despite increased pain complaints, which he asserts is inconsistent with the medical evidence on record.[254]  However, the records that the ALJ cites to do not support this conclusion.  Rather, these records indicate increased pain, note that the

---

[249] D.I. 13 at 12.
[250] *Masher v. Astrue,* 354 F. App'x 623, 628 (3d Cir. 2009); See *Brownawell*, 554 F.3d at 355-56 (ALJ failed to give appropriate weight to opinion of treating physician, who repeatedly opined that claimant was "disabled").
[251] *Id.*
[252] D.I. 7-14 at 811.
[253] See 20 C.F.R. §§ 404.1529(b), 416.929(b); *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).
[254] D.I. 7-2 at 25; 7-17 at 979-980.

lumbar fusion surgery did not "take well," and a pain level between seven and eight.[255]

Therefore, the records on which the ALJ relies are not inconsistent with Dr. Bose's opinion. Finally, in the ALJ's explanation of why Dr. Bose's opinion should not receive controlling weight, he failed to expand on the factors set forth in 20 C.F.R. §404.1527(c).

### b.    State Agency Consultants

In deciding that plaintiff could perform light work, the ALJ gave significant weight to the medical conclusions of the State Agency Consultants, Dr. Campo's opinion dated May 9, 2015, and Dr. Kataria's opinion dated August 25, 2015.[256]  Drs. Campo and Kataria opined that the plaintiff could perform light work, except she could only stand and/or walk four hours total in an eight hour work day; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold, heat, wetness, humidity, pulmonary irritants, and hazards.[257]  However, when reviewing the record, both Drs. Campo and Kataria did not opine that plaintiff could perform light work.  Rather, both State Agency Consultants concluded that the plaintiff could perform sedentary work.[258]  Therefore, the ALJ erred in his finding that the plaintiff can perform light work.  Further, the State Agency Consultants medical determinations should not be given significant weight because they contradict the findings of plaintiff's treating

---

[255] *Id.*
[256] D.I. 7-2 at 25.
[257] *Id.*
[258] D.I. 7-3 at 85; *Id.* at 102.

36

physicians.[259]

## 2.    The ALJ's RFC Finding

Plaintiff alleges the ALJ erred in his RFC determination because the opinions of her treating specialists establish greater limitations than set forth in the RFC.[260]  An RFC establishes what an individual can do in a work setting despite impairments and limitations.[261]  In making this finding, the ALJ must consider all of a plaintiff's impairments, including those lacking severity.[262]  Although the ALJ may weigh the credibility of the evidence, he must indicate the evidence which is rejected and his reason(s) for discounting such evidence.[263]  All evidence in the record must be considered; however, the ALJ has the exclusive responsibility for determining an individual's RFC.[264]

In the current matter, the ALJ found that through the date last insured, plaintiff had the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b), except she could only occasionally stoop, kneel, crouch and crawl, and stand and/or walk for a total of four hours in an eight hour work day; never climb ladders, ropes, or scaffolds; and have no exposure to hazards.[265]  Further, the ALJ found plaintiff capable of performing past relevant work as a proof operator, and such

---

[259] *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986).
[260] D.I. 16 at 5.
[261] 20 C.F.R. § 404.1545.
[262] *Id.*
[263] *See Plummer*, 186 F.3d at 429.
[264] 20 C.F.R. § 404.1527(d)(2).
[265] D.I. 7-2 at 18.

work does not require work-related activities precluded by her RFC.[266]  First, the ALJ found that through her date of last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d), § 404.1525, or § 404.1526.[267]  Second, the ALJ considered all of plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.[268]

Plaintiff argues that vocational testimony based on an inaccurate RFC is not substantial evidence supporting an ALJ's denial of benefits.[269]  The court agrees, because as previously noted, the ALJ erred in his consideration of and weight afforded to the medical opinion evidence under 20 C.F.R. § 404.1527.

## V.   CONCLUSION

Therefore, Plaintiff's Motion for Summary Judgment (D.I. 11) is granted, and Defendant's Motion for Summary Judgment (D.I. 13) is denied.  For the reasons stated herein, the ALJ's decision is reversed and remanded for further administrative proceedings consistent with this opinion.  An order with the findings in this Memorandum shall follow.

Date: August 8, 2019

                                        /s/ Mary Pat Thynge
                                        Chief U.S. Magistrate Judge

---

[266] D.I. 7-2 at 26; 20 C.F.R. § 404.1565.
[267] D.I. 7-2 at 17.
[268] *Id.* at 18; 20 C.F.R. § 404.1529.
[269] D.I. 11 at 11.